UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LANI E. CLARK | § | |
| | § | |
| v. | § | |
| | § | Case No. A-19-CV-0198-LY-SH |
| LOIS KOLKHORST | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

**TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE**

Before this Court are Defendant's Motion to Dismiss (Dkt. No. 16); Plaintiff's Response (Dkt. No. 19); Defendant's Reply (Dkt. No. 20); and Plaintiff's Sur-Reply (Dkt. No. 34; *see also* Dkt. No. 30 (Plaintiff's Motion for Leave to File Sur-Reply)). On September 16, 2019, the District Court referred the above motion to the undersigned Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas (Dkt. No. 29).

## I. BACKGROUND

Plaintiff Lani E. Clark brings this suit against Defendant Lois Kolkhorst, alleging that Kolkhorst violated her First and Fourteenth Amendment rights by blocking Clark from posting on Kolkhorst's Facebook page. Kolkhorst is a State Senator representing Texas Senate District 18. Dkt. No. 14 at ¶¶ 17, 26. Clark is a resident of Austin, Texas, and a constituent of Kolkhorst's district. *Id.* at ¶¶ 16, 33.

1

In her Amended Complaint, Clark alleges that Kolkhorst is responsible for operating a public Facebook page titled "Lois Kolkhorst" (the "Kolkhorst Facebook Page").[1] *Id*. at ¶ 25; *see also id.* at pp. 32-35.[2] Clark alleges that on the Kolkhorst Facebook Page, Kolkhorst "frequently posts about matters that pertain strictly to her official government position as a sitting State Senator," including "meetings with constituents" and "legislation that may be considered by herself, as a member of the Texas Senate, and other Senators, that affects constituents in Defendant's district." *Id*. at ¶¶ 26-27.

The exhibits attached to the Amended Complaint, which the Court may consider, show that Kolkhorst also posts pictures of herself and her work at the Texas State Capitol. *See id.* at pp. 28, 32-33. Clark contends that Kolkhorst "willingly and knowingly" configured the Kolkhorst Facebook Page to be open to the public and to "encourage and permit public expression and interaction on matters of public concern." *Id*. at ¶ 31. The Amended Complaint also states that as of the date of filing Clark's Original Complaint, March 1, 2019, the "About" section of the Kolkhorst Facebook Page contained a "Government Official" designation.[3] *Id*. at ¶ 50.

Clark alleges that she first accessed the Kolkhorst Facebook Page through a Facebook application called "Town Hall." *Id.* at ¶¶ 33-34. Clark further alleges that "[w]hen a Kolkhorst constituent enters their residential address into their Facebook profile and uses the Facebook 'Town Hall' application, which helps users find and communicate with their federal and state representatives on Facebook, the constituent is directed to the public Kolkhorst Facebook page."

---

[1] Plaintiff alleges that the Kolkhorst Facebook Page is separate from Kolkhorst's "privately operated" Facebook page. Dkt. No. 14 at ¶ 25.

[2] Clark attaches screenshots of the Kolkhorst Facebook Page as exhibits to her Amended Complaint. *See* Dkt. No. 14 at pp. 38-51.

[3] Exhibit F to the Amended Complaint is an undated screenshot of the "About" section with the "Government Official" designation. Dkt. No. 14 at p. 38. In her motion to dismiss, Kolkhorst states that this designation has "since been updated." Dkt. No. 16 at 3 n.1.

*Id.* at ¶ 25. Once a user has entered his or her address and is using the Town Hall application, any comments made by the user on his or her representative's Facebook page will include an icon to identify the user as a constituent. *Id.*; *see also id.* at p. 28. Clark alleges that when she first accessed the Kolkhorst Facebook Page, she had full access and could see all posts and comment on them, with the constituent icon appearing by her name. *Id.* at ¶¶ 40, 42-43.

On or about March 3, 2017, Kolkhorst published a post on the Kolkhorst Facebook Page to promote Senate Bill 6, known as the "Bathroom Bill," which Kolkhorst authored. *Id.* at ¶ 34. Clark alleges that, after accessing the Kolkhorst Facebook Page through the Town Hall application, she commented on Kolkhorst's March 3, 2017 post to voice her opposition. *Id.* at ¶¶ 33, 37, 40. Clark alleges that several other users posted replies to her comment on the post. *Id.* at ¶ 37. According to Clark, she later returned to the post and found her comment deleted. *Id.* at ¶ 38. Clark posted her comment again, but later discovered that her second comment also had been deleted, and that she was blocked from commenting further on the Kolkhorst Facebook Page. *Id.* at ¶¶ 39-43.

Clark contends that Kolkhorst likewise has deleted other users' comments and blocked other users who have expressed criticism on the Kolkhorst Facebook Page. *Id.* at ¶¶ 38, 41. According to Clark, Kolkhorst intentionally removed critical comments and "made it appear that she and her Bathroom Bill had more support than they actually did, thereby misrepresenting the public's response to her and her bill." *Id.* at ¶ 41. Clark alleges that Kolkhorst has adopted and enforced a policy or custom of removing or hiding comments that are critical of Kolkhorst or her viewpoints, and of restricting speakers who express viewpoints unfavorable to Kolkhorst or Kolkhorst's views. *Id.* at ¶¶ 60-72.

Clark's Amended Complaint alleges that Kolkhorst created a public forum by encouraging comments from the public and, by blocking Clark and deleting her comments, violated Clark's

First Amendment rights by engaging in viewpoint-based discrimination. Clark further alleges that Kolkhorst took these actions without notice and without providing an opportunity for appeal, thus violating her rights under the Fourteenth Amendment's Due Process Clause. Clark asserts claims pursuant to 42 U.S.C. § 1983 against Kolkhorst in both her official capacity and her individual capacity, seeking declaratory judgment and injunctive relief. Dkt. No. 14 at pp. 25-26.

## II. Motion To Dismiss

In her motion to dismiss, Kolkhorst argues that Clark has failed to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Specifically, Kolkhorst asserts that the Kolkhorst Facebook Page is her campaign page and "disassociated from her official work as a senator." Dkt. No. 16 at 3, 5. Kolkhorst argues that her management of a campaign page does not constitute state action, asserting that Clark has failed to plead the element of her claims that Kolkhorst acted under the color of state law. *Id*. at 8-11. Alternatively, Kolkhorst argues that even if her management of the Kolkhorst Facebook Page constitutes state action, Clark's claims still must be dismissed because Clark has not established any violation of her First or Fourteenth Amendment rights. *Id*. at 11-14. Finally, Kolkhorst argues that all claims asserted against her in her individual capacity should be dismissed because Section 1983 claims for injunctive or equitable relief may only be brought against a state official in her official capacity. *Id*. at 14-18.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its

4

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV. ANALYSIS

The Court first addresses Clark's claims against Kolkhorst in her official capacity, then considers Clark's claims against Kolkhorst in her individual capacity.

### A. Section 1983

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of a right secured by the Constitution and laws of the United States. To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013); *see also Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (noting that whether the plaintiff has been deprived of a right secured by the Constitution is a threshold inquiry in a Section 1983 claim).

#### 1. Action Under Color of State Law

Kolkhorst asserts that Clark's First and Fourteenth Amendment claims must be dismissed because the actions alleged in Clark's Amended Complaint do not constitute action under color of state law for the purpose of Section 1983. Kolkhorst argues that in managing the Kolkhorst Facebook Page, she was acting in her individual capacity, not in her official capacity as a State

Senator. Dkt. No. 16 at 8. Administration of the Kolkhorst Facebook Page is "not among any actual or apparent duties of a Texas State Senator," Kolkhorst argues. *Id*. She compares the Kolkhorst Facebook Page to a campaign rally, claiming that it is "a form of campaigning, self-promotion, and expression, done in her individual capacity as a long-serving politician." *Id*. For these reasons, Kolkhorst argues, Clark has failed to advance any "plausible allegations that Kolkhorst has issued official proclamations or performed any official duties of her office through her Facebook page." *Id*. at 10. Thus, Kolkhorst contends, she has not acted under color of state law, and Clark cannot assert an action against her in her official capacity. *Id.* at 11.

Section 1983's "under color of state law" requirement is the functional equivalent of the Fourteenth Amendment's "state action" requirement. *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). "A person acts under color of state law if he misuses power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Bustos v. Martini Club Inc*., 599 F.3d 458, 464 (5th Cir. 2010) (quoting *Screws v. United States*, 325 U.S. 91, 111, (1945)). Assessing whether conduct constitutes action under color of state law is "fact-intensive" and should be addressed on a case-by-case basis. *Rundus v. City of Dallas*, 634 F.3d 309, 313 (5th Cir. 2011); *see also Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (stating that courts look to the "totality of circumstances" to determine whether conduct arises under color of state law).

At this stage in the litigation, the Court's review is limited to determining whether Clark has alleged facts sufficient to survive a Rule 12(b)(6) dismissal. Clark's Amended Complaint alleges that Kolkhorst used the Kolkhorst Facebook Page to post legislative news updates and to interact with her constituents through their comments on her posts, and that Kolkhorst made and executed decisions about which users to block from the Kolkhorst Facebook Page while serving as a Texas

6

State Senator. Clark's pleaded facts and attached exhibits support her contention that Kolkhorst acted in her official capacity while operating the Kolkhorst Facebook Page. Accordingly, at the Motion to Dismiss stage, the Court finds that Clark has pleaded facts that lead to a reasonable inference that Kolkhorst acted under color of state law when she deleted posts and banned Clark from the Kolkhorst Facebook Page.[4]

### 2. First Amendment Claim

In the alternative, Kolkhorst contends that, even if her management of the Kolkhorst Facebook Page constitutes action under color of state law, dismissal of Clark's First Amendment claim is required under the government speech doctrine. Dkt. No. 16 at 11. Kolkhorst argues that the Court should follow the analysis in *Morgan v. Bevin*, 298 F. Supp. 3d 1003 (E.D. Ky. 2018), to find that the Kolkhorst Facebook Page constitutes "government speech" and thus is exempt from First Amendment scrutiny. Dkt. No. 16 at 11. According to Kolkhorst, if the Court finds that she operates the Kolkhorst Facebook Page in her official capacity as a Texas State Senator, then she has the right to control the content that represents the government's speech. *See id*. at 12. She quotes *Bevin,* 298 F. Supp. 3d at 1011, to assert that the Kolkhorst Facebook Page is a "means for communicating [her] own speech, not the speech of [her] constituents." Dkt. No. 16 at 12. Kolkhorst argues that applying the government speech doctrine, the Kolkhorst Facebook Page is exempt from First Amendment scrutiny, so Clark cannot establish any constitutional violation for her First Amendment claim under Section 1983. *Id.* at 11.

Clark responds that the government speech doctrine is inapplicable because "no reasonable person would mistake a citizen comment on the page for speech of the State of Texas." Dkt. No. 19

---

[4] To be clear, the Court does not hold that Kolkhorst did, in fact, act under color of state law. Rather, based on the allegations of and exhibits to Clark's Amended Complaint, the Court finds that Clark has plausibly pled facts to satisfy the Rule 12(b)(6) threshold.

at 15. Clark's Amended Complaint alleges that any Facebook user can post comments to the Kolkhorst Facebook Page in the user's own name, which in some cases appears with the constituent badge. Dkt. No. 14 at ¶¶ 25, 30, 31, 35. Nowhere does the Kolkhorst Facebook Page state that all comments represent the government's speech. Dkt. No. 19 at 16.

Accepting Clark's allegations as true, Kolkhorst's speech and the comments of private citizens are distinct. Clark complains not about Kolkhorst's posts or expressions of opinion, but of her deletion of comments made by others in an allegedly public forum. Moreover, Clark alleges that Kolkhorst intentionally created the Kolkhorst Facebook Page to allow and encourage citizen speech. Dkt. No. 14 at ¶¶ 30-31. This illustrates, Clark alleges, that the Kolkhorst Facebook Page was intended to be used for interactive discussion. *Id*. at ¶¶ 27-31. Based on these facts, Clark asserts that Kolkhorst's deletion of comments and banning of certain users based on her disagreement with their opinions constitutes impermissible viewpoint discrimination.

Clark has stated sufficient facts to plausibly allege that Kolkhorst's deletion of comments and banning of users from the Kolkhorst Facebook Page does not constitute government speech. The only facts a court considers in analyzing a motion to dismiss are those alleged by the plaintiff. *See In re Katrina*, 495 F.3d at 205. Based on the allegations in the Amended Complaint, Clark plausibly stated a claim that the Kolkhorst Facebook Page is a public forum, and thus, Kolkhorst's deletion of comments by private citizens and banning of users is subject to First Amendment scrutiny. *Cf. Robinson v. Hunt Cty., Tex*., 921 F.3d 440, 452 (5th Cir. 2019), *reh'g denied*, May 16, 2019 (reversing in part grant of motion to dismiss where plaintiff sufficiently pleaded that Facebook page of sheriff's office constituted a public forum and deletion of comments constituted viewpoint discrimination). Accordingly, the Court recommends that the District Court decline to dismiss Clark's First Amendment claim under the government speech doctrine.

### 3. Fourteenth Amendment Claim

Kolkhorst next argues that even if the Court finds that she managed the Kolkhorst Facebook Page as a state actor, Clark's Fourteenth Amendment claim still fails because Clark had no constitutional right to due process before having her comments removed or being banned from the Kolkhorst Facebook Page. Dkt. No. 16 at 13-14. According to Kolkhorst, it would be "practically unworkable" to provide Clark pre-deprivation notice and an opportunity to be heard before removing her comments from the page. *Id*. at 13. Kolkhorst further argues that Clark's interest in commenting on the Kolkhorst Facebook Page is "relatively weak," given that Clark has other methods to share her views. *Id*.

Kolkhorst cites *Davison v. Loudon County Board of Supervisors*, 267 F. Supp. 3d 702 (E.D. Va. 2017), in support of her argument that Clark had no right to pre-deprivation due process related to the Facebook restrictions. Dkt. No. 16 at 13. However, the procedural posture of *Davison*—issued after a bench trial—is distinguishable from that of the instant motion to dismiss. Notably, on both occasions that the *Davison* Court addressed the issue of due process on motions to dismiss, the Court allowed the claims to go forward. *See Davison v. Loudoun Cty. Bd. of Supervisors*, 2016 WL 4801617, at *7 (E.D. Va. Sept. 14, 2016); *Davison v. Loudoun Cty. Bd. of Supervisors*, 227 F. Supp. 3d 605, 612-13 (E.D. Va. Jan. 4, 2017).

Taking the Amended Complaint as true, it is plausible that Kolkhorst's ban of Clark from the Kolkhorst Facebook Page constitutes an impermissible prior restraint on her freedom of speech, thereby implicating her due process rights. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 590 n.14 (1972) ("When a State would directly impinge upon interests in free speech or free press, this Court has on occasion held that opportunity for a fair adversary hearing must precede the action . . . ."). That Kolkhorst believes Clark's interest is "relatively weak" does not meet the Rule 12(b)(6) standard for dismissal of the claim. *See Iqbal*, 556 U.S. at 677. Kolkhorst, moreover,

fails to address Clark's claims regarding her post-deprivation due process rights. *See* Dkt. No. 14 at ¶ 100. Clark's Amended Complaint alleges that there is "no means to appeal or otherwise challenge" a ban or removal of comments from the Kolkhorst Facebook Page—an allegation Kolkhorst does not discuss. *Id*. At this early stage of the litigation, whether Kolkhorst violated Clark's due process rights necessitates discovery to develop a more complete record. Accordingly, the undersigned recommends that Kolkhorst's motion to dismiss Clark's Fourteenth Amendment claim also be denied.

### B.     Individual Capacity Claims

Clark brings her claims against Kolkhorst in both her official capacity and individual capacity. Kolkhorst argues that she is entitled to dismissal of the individual capacity claims. Dkt. No. 16 at 14-18. Kolkhorst asserts the defense of qualified immunity as to any potential claims for monetary damages against her in her individual capacity. *Id*. She further argues that because claims for declaratory judgment and injunctive relief are not permitted against a state officer sued in her individual capacity, Clark may pursue her claims against Kolkhorst only in her official capacity. *Id*. at 15.

Clark responds that because she is seeking only injunctive and declaratory relief, not monetary damages, qualified immunity is inapplicable. Dkt. No. 19 at 21. Clark further responds that Section 1983 allows for injunctive or declaratory relief on individual capacity claims where the defendant has not acted in her official, governmental role but has nonetheless acted "under color of state law." *Id*. at 20.

The Court agrees with Clark that Kolkhorst's qualified immunity defense is not relevant. It is well-established in the Fifth Circuit that qualified immunity extends only to Section 1983 claims for money damages. *See Robinson*, 921 F.3d at 452. Because Clark's lawsuit seeks declaratory

and injunctive relief but no monetary damages, Kolkhorst's argument of qualified immunity is without merit. *See Waller v. Hanlon*, 922 F.3d 590, 598 (5th Cir. 2019) (noting that defendants could not assert qualified immunity against plaintiffs' declaratory judgment claims).

Finally, the Court considers Clark's claims seeking declaratory and injunctive relief against Kolkhorst in her individual capacity. Where claims are brought against an officer in her individual capacity, the suit seeks to "impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). To establish individual capacity liability in a Section 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. *Graham*, 473 U.S. at 166. Courts determine whether an individual defendant has acted under color of state law by considering whether she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). An action may arise under color of state law "where a sufficiently close nexus" exists between a defendant's ostensibly unofficial conduct and her public office. *Brentwood Acad.*, 531 U.S. at 295.

As discussed above, Clark has pled sufficient facts to plausibly allege that Kolkhorst acted under color of state law in managing the Kolkhorst Facebook Page. Clark has alleged not only that Kolkhorst developed an official policy through her position as a State Senator (Dkt. No. 14 at ¶¶ 61-72, 87), but also that Kolkhorst in her individual capacity acted under color of state law in violating Clark's constitutional rights (Dkt. No. 14 at ¶¶ 76-86). Accordingly, Clark has set forth plausible claims against Kolkhorst in her official and individual capacities. *See Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019).

To the extent Clark seeks an injunction to control official state action, Kolkhorst is correct that such relief could be maintained only against Kolkhorst in her official capacity. Dkt. No. 16 at 15. However, at this point it remains undetermined whether or not the conduct of which Clark complains constitutes official state action or individual action arising under color of state law. Accordingly, the Court recommends that Kolkhorst's motion be denied.

## V. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant's Motion to Dismiss (Dkt. No. 16).

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on February 5, 2020.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE