UNITED STATES DISTRICT COURT WESTERN DISTRICT OF TEXAS
Austin Division

| | |
|---|---|
| LANI E. CLARK<br><br>Plaintiff<br><br>v.<br><br><br>LOIS KOLKHORST, Texas State Senator, in her individual capacity and official capacity,<br><br>Defendant | Case No. 1:19-CV-00198-LY-SH |

## PLAINTIFF LANI E. CLARK'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule CV-7(e) of the Local Rules of the United States District Court for the Western District of Texas, Plaintiff Lani E. Clark hereby respectfully requests that the Court deny Defendant's Motion to Dismiss. (Doc. 48)

In support of this Motion, Plaintiff relies upon and incorporates by reference the arguments, facts, attachments, exhibits and legal authority set forth in Plaintiff's Motion for Summary Judgment (Doc. 49), as well as those set forth in Plaintiff's Response to Defendant's Motion To Dismiss (Doc. 19) and Plaintiff's Sur-Reply (Doc. 30, Attachment #1).

## INTRODUCTION

"Accordingly I went to one who had the reputation of wisdom, and observed him – his name I need not mention; he was a politician whom I selected for examination – and the result was as follows: When I began to talk with him, I could not help thinking that he was not really wise, although he was thought wise by many, and still wiser by himself; and thereupon I tried to explain to him that he thought himself wise, but was not really wise; and the consequence was that he hated me, and his enmity was shared by several who were present and heard me.

So I left him saying to myself, as I went away: Well, although I do not suppose that either of us knows anything really beautiful and good, I am better off than he is, - for he knows nothing, and thinks that he knows; I neither know nor think that I know.  In this latter particular, then, I seem to have slightly the advantage of him." - Plato's Apology

Plaintiff has provided facts sufficient to establish the elements essential to Plaintiff's case, so the Court should deny Defendant's Motion to Dismiss.

## **LEGAL STANDARD**

According to the U.S. Supreme Court, "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317,322 (1986).  In the event that a defendant files a motion for summary judgment, as long as the opposing party, the plaintiff, makes a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the Court should deny a defendant's motion for summary judgment. *Id*. at 322-323.

## **STATEMENT OF FACTS**

As mentioned above, in support of this Motion, Plaintiff relies upon and incorporates by reference the arguments, facts (including, but not limited to, Plaintiff's "Statement of Undisputed Material Facts"), exhibits, and legal authority set forth in Plaintiff's Motion for Summary Judgment (Doc. 49).

## ARGUMENT

In addition to arguments Plaintiff has presented this Court in her Motion for Summary Judgment (Doc. 49), which are incorporated herein by reference, plaintiff will address Defendant's specific claims in Defendant's Motion for Summary Judgment (Doc. 48).

In Defendant's Motion to Dismiss, Defendant attempts to compare the Kolkhorst Facebook page at https://www.facebook.com/LoisKolkhorst/ ("Kolkhorst Facebook page") to the Facebook campaign pages of past public officials, President Bush and President Obama, both who are no longer in office or running for office. (Doc. 48, P.1) A better comparison would be the Facebook pages of elected officials whose Facebook pages are currently published and operating, such as those of Texas Governor Greg Abbott, as well as those of Plaintiff's House and Senate representatives, U.S. House Rep. Michael McCaul, U.S. Senator Ted Cruz and U.S. Senator John Cornyn. Each of those public officials has at least two public Facebook pages – one that is their public official page and is listed under the Town Hall application, and a public campaign page that is not listed under the Town Hall Application. (See **Exhibit B**) The fact that Defendant has combined what these public officials have done with two Facebook pages into one Facebook page and uses viewpoint censorship on <u>all</u> comments and replies to her one page is further evidence that there is sufficient nexus or entwinement for the Kolkhorst Facebook page to be considered managed and maintained under color of state law.

The Kolkhorst Facebook page was originally categorized as "Government Official." (Doc. 14, Exhibit F). Defendant changed the page category <u>after</u> Plaintiff filed her Original Complaint (Doc. 1) on March 1, 2019, and <u>before</u> Plaintiff filed her Amended Complaint (Doc. 14) on May 6, 2019. This change appears to be in response to Plaintiff's filing of this lawsuit. In addition, of all of the categories to which Defendant could have changed the page, she decided on "Politician," which is the only other category Defendant could pick that is not "Government

Official" and will still allow the page to remain listed under the Facebook Town Hall application. (See **Exhibit A**)  She could have chosen the "Political Candidate" category or many others and her page would <u>not</u> have been listed under the Town Hall application. (*Id*.)

Defendant mentions the fact that Plaintiff manages a Facebook group, Texas Bill Watchers, which Plaintiff established as a non-partisan informational page to help Texas voters navigate the State of Texas website, Texas Legislature Online, so group members can find and track bills in the Texas Legislature. (Doc. 48, P.5)[1] Plaintiff pre-approves posts to the group and does not allow partisan posts, as it would distract from the informational purpose of the group. Nonetheless, Defendant fails to appreciate the fact that Plaintiff is not a public official in any capacity and, therefore, is not subject to First and Fourteenth Amendment limitations with regard to any Facebook pages or groups Plaintiff manages.

Defendant mentions that Plaintiff has two Facebook user accounts: Plaintiff's primary user account under the user name "Lulu Clark" and a secondary account under the user name "Zelda Williams" (previously "Zelda Sukit").  Plaintiff does not use her legal name as a Facebook user name for privacy reasons.  Plaintiff's "Lulu Clark" profile has very strict privacy settings and Plaintiff does not post pictures of her face on Facebook due to the fact that she does frequently engage in political discourse on Facebook and has received threats of physical violence via Facebook Messenger as a result of her political opinions.  As for the Zelda account, Plaintiff created that account when the "Lulu" account was "temporarily restricted" on September 18, 2018. (See **Exhibit C**)  This restriction was due to a Facebook glitch, as Plaintiff

---

1 Although Plaintiff has a video recording of Plaintiff's deposition, Plaintiff was not provided with a transcript of the deposition until Plaintiff saw Defendant's Appendix to Defendant's Motion for Summary Judgment (Doc. 48-1).  Plaintiff has already noticed at least two significant errors in one short highlighted section of the transcript: P. 21 of 36 of Defendant's Doc. 48-1, P. 26 of transcript, lines 3-5 should state: "Any partisan post or any post that took sides on a particular **piece of** legislation were denied.  t's supposed to **be a non-partisan** page." [emphasis added]  Therefore, Plaintiff hereby formally objects to the transcript of Plaintiff's deposition Defendant has filed, as it would not be admissible at trial and should not be relied upon by the Court.

mentioned in her deposition (See Doc. 48, Appx. 18), and not because she violated any Facebook standards.  The "Lulu" account was reactivated shortly after the restriction was put in place. (*Id*.)

Defendant claims Plaintiff "interrupted posts and threads with Kolkhorst's supporters by interjecting comments and criticisms on topics separate from, and unrelated to, the specific post" and that Defendant's supporters might have been "challenged by Plaintiff on Kolkhorst's support for the so-called 'Bathroom Bill'." (Doc. 48, P. 7)  As Plaintiff posted at least one comment to Defendant's March 3, 2017, post about the Bathroom Bill and received replies to that comment, Plaintiff also may have replied to others who commented on the same post about the same topic. That is the whole purpose of Facebook – to post topics under which other users can post comments and reply to comments.  Defendant doesn't seem to mind comments and replies to her posts as long as they agree with Defendant's and her supporters' viewpoints.  Plaintiff posted comments on Defendant's Facebook page with the hope and expectation that other users would agree and disagree with Plaintiff's views so we could all discuss them further.  Furthermore, while Plaintiff does not recall leaving comments about the Bathroom Bill on posts unrelated to the Bathroom Bill, Plaintiff does often comment on the most recent post on a public official's page (at the top of the page) if Plaintiff can't find a recent post about the topic Plaintiff seeks to discuss, since the most recent post generally has the least number of comments and, therefore, is most likely to be seen by the page owner and other Facebook users who visit the page.  Many public officials will purposefully not post about a topic they wish to avoid discussing or bringing attention to, so it is not unusual for Facebook users to post comments, the subject matter of which has nothing to do with the post they are commenting on.

Defendant recites her policy of ensuring the Kolkhorst Facebook page "does not serve as a host to any form of harassment, name-calling, vulgarity, bullying, or threat to any person." and that "occasionally, persons are blocked from the page for violating these standards." (Doc. 48-1,

¶¶11-13)  Defendant has, to date, not said whether she determined that Plaintiff's comment(s) violated her policy.  Even so, what one person considers "harassment" or "bullying" may be considered a necessary and informative public debate about a controversial political topic by another person.  The First Amendment gives speakers a wide berth, protecting speech that is unpopular, offensive and distasteful. *Nat'l Socialist Party of Am. v. Vill. of Skokie*, 432 U.S. 43, 43-44 (1977) (1st Am. rights of Neo-nazis); *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) (1st Am. rights of KKK); *Texas v. Johnson*, 491 U.S. 397, 405-06 (1989) (flag burning protected)  Political speech is especially protected under the First Amendment. *Buckley v. Valeo*, 424 US 1,48 (1976); *Citizens United v. Federal Election Com'n*, 130 S. Ct. 876,882 (2010).  The only documentation of any comment Plaintiff made to the Kolkhorst Facebook page was generated by Plaintiff in response to Defendant's production request. (Doc. 48, P. 6)  As a private company, Facebook maintains a set of "Community Standards" page administrators can use to report objectionable content to so that Facebook can apply an objective set of standards to speech on its platform. (See **Exhibit D**)  Facebook is more likely to be a neutral arbiter of which speech is objectively censor-worthy than an elected public official whose campaign for re-election benefits from curating comments on a public forum created on the platform.  Furthermore, all Facebook users agree to abide by these community standards when they create a Facebook user profile.

      Defendant mentions that Plaintiff "appears to have encouraged her friends to bombard the Kolkhorst page with the hashtag "#unblockluluclark." (Doc. 48, P.7)  This hashtag campaign was Plaintiff's last ditch effort to encourage Defendant and her staff to reach out to Plaintiff to discuss unbanning her Facebook account, is protected speech under the First Amendment and is less disruptive and less expensive than fighting a federal lawsuit.  Unfortunately, the hashtag campaign was unsuccessful and Plaintiff had no other option but to file this lawsuit.

Defendant also claims that Plaintiff suffered no injury since Plaintiff can still comment on the Kolkhorst Facebook page using the "Zelda" account. As discussed in Plaintiff's Motion for Summary Judgment (Doc. 49, P. 22), a plaintiff who challenges state action does not have to wait for the actualization of a threatened injury to obtain prospective relief if there is a credible threat of enforcement. *Babbitt v. Farm Workers*, 442 U.S. 289,298 (1979); *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2343 (2014). The user account "LuluClark" has been banned by Defendant from the Kolkhorst Facebook page, comments by Plaintiff's "Zelda" user account were hidden on Defendant's page, another random user was banned from the page for reasons the user couldn't determine, and Defendant hid 132 comments from one post and hid random comments by Plaintiff's friends on another post on Defendant's Facebook page. (Doc. 49, SMF ¶¶ 18-22) It is reasonable to assume that, should Plaintiff attempt to participate on Defendant's Facebook page as "Zelda" and post comments that don't reflect Defendant's viewpoints, her comments would be hidden and her user account banned. Therefore, this Court has jurisdiction to order the declaratory and injunctive relief Plaintiff has requested.

Defendant seems to suggest that, since Plaintiff has other means of petitioning her government, Plaintiff has not suffered an injury. (Doc. 48, P. 8) Defendant created the public forum on her Facebook page, just as a public official might welcome members of the public to a Town Hall. That public official isn't allowed to kick participants out based on their viewpoints and then claim there is no injury because those participants have other means to communicate with that public official. *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 811 (1985) ("The existence of reasonable grounds for limiting access to a nonpublic forum [ ] will not save a regulation that is in reality a facade for viewpoint-based discrimination") (citations omitted); *Huminski v. Corsones*, 396 F.3d 53,92 (2d Cir. 2004) (concluding a notice against trespass was an unreasonable restriction, as it singled out an individual for exclusion in

expressive activity in and around a courthouse, where all others were permitted to engage in such expressive activity); *Packingham v. North Carolina,* 137 S. Ct. 1730, 1737 (2017); see also *Schneider v. State*, 308 U.S. 147, 163 (1939) ("[O]ne is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.").

In Defendant's discussion of the free speech rights of "aspiring" officeholders versus those of "incumbent" office holders, Defendant claims that "Plaintiff's theory of liability, if ultimately successful, would elevate private citizens' speech over that of elected officials." (Doc. 48, P. 15)  To the contrary, the First Amendment puts elected officials on a more level playing field with other, less powerful speakers.  Defendant fails to acknowledge and appreciate the power she has as an elected public official as compared to an "aspiring" officeholder.  The drafters of the Constitution limited the government's ability to restrict the speech of U.S. citizens because they knew that, absent such limits, elected officials would inevitably use their powerful positions to limit critical speech just has Defendant has done on her Facebook page.  Just as Plaintiff was led to think that all of the comments on the March 3, 2017 Bathroom Bill post on the Kolkhorst Facebook page represented <u>all</u> public comments submitted to the post with regard to the Bathroom Bill, other users likely fell under the same misconception because the Kolkhorst Facebook page appears to be a public forum created by the Senator who authored the bill and who was to vote on the bill.  A public forum opened by a public official to which members of the public are welcomed to express their feelings on a controversial piece of legislation is a powerful platform; it is also ripe for abuse in terms of the risk of misrepresenting the public's true response to the legislation and thereby influencing whether other members of the public will decide to support such legislation.  A candidate running for public office does not have the same

motivation or influence, since they are not yet in the powerful official position to attract the public's attention and to have any official impact on such legislation.

Defendant claims the Kolkhorst Facebook page is "...operated and financed exclusively by the Kolkhorst campaign and receives no government support." (Doc. 48, P. 15)  Facebook does not charge anyone for creating a page on their platform.  The individual who Defendant admitted is responsible for managing the page, Matthew Russell, Media Director for Defendant's campaign, also works in Defendant's Senate office as her Communications Director. (See Doc. 49, Exh. 7, Resp. & Supp. Resp. Nos. 1-3)  Defendant's campaign does not have a physical campaign office year-round.  (See *Id*, Exhibit 9, Resp. No. 22)  Defendant's campaign purchases office supplies for use in Defendant's Senate offices. (See *Id*., Exhibit 8)  The entwinement between Defendant's campaign activities and her Senate position cannot be overcome with evidence that Defendant pays a third-party media company to help her use the Kolkhorst Facebook page to make it an even more powerful platform in which she is free to censor speech she originally welcomed and free to manipulate the public's reaction to the official matters she posts about on the page.

## CONCLUSION

If Defendant is permitted by the Court to continue managing the Kolkhorst Facebook page as she has, censoring public speech in a public forum based on the viewpoints of the speakers, how long will it take for public officials like Texas Governor Greg Abbott, U.S. Rep. Michael McCaul and U.S. Senators Ted Cruz and John Cornyn to do exactly what Defendant is doing on her Facebook page – combining the benefits of what appears to be an open forum created by a public official while comprehensively applying the type of censorship the Constitution only permits on the truly  private pages of government officials?  At what point will

public officials also attempt to extend this "I'm Campaigning" loophole to other, more traditional public forums, like public meetings and town halls?

Adding insult to injury, Defendant Kolkhorst has recently voted in favor of Texas Senate Bill 2373, which "...seeks to prevent social media platforms like Facebook and Twitter from censoring users based on their viewpoints." (https://wacotrib.com/news/government/texas-bill-would-allow-state-to-sue-social-media-companies-like-facebook-and-twitter-over/article_867cbb27-5b8d-52bc-8e60-b7438bb1dd14.html); See also **Exhibit E**.)  According to the bill's sponsor, Texas Senator Bryan Hughes, "the bill applies to social media platforms that advertise as unbiased but still censor users." (*Id.*)  Hughes adds, "Senate Bill 2373 tries to prevent those companies that control these new public spaces, this new public square, from picking winners and losers based on content." (*Id.*)  How ironic that Defendant wants to allow the State of Texas to file lawsuits against private companies, to which the First and Fourteenth Amendments are not applicable, accusing those companies of doing exactly what Defendant, a State Senator, is actually doing on the Kolkhorst Facebook page.

Plaintiff has provided sufficient facts to establish the elements essential to Plaintiff's case, so the Court should deny Defendant's Motion to Dismiss.

Dated: July 29, 2020

                                              Respectfully submitted,

                                              */s/ Lani E. Clark*

                                              Lani E. Clark
                                              2728 Wiecker Road
                                              Bellville, Texas  77418
                                              Telephone: (713) 454-3331
                                              E-mail: lani_clark@hotmail.com

**PRO SE**

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2020, a true and correct copy of the foregoing document was transmitted via using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

Michael R. Abrams
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas  78711-2548
Michael.Abrams@oag.texas.gov
**Counsel for Senator Lois Kolkhorst in her Official Capacity**

Gunnar P. Seaquist
Bickerstaff Heath Delgado Acosta LLP
3711 S. MoPac Expressway
Building One, Suite 300
Austin, Texas  78746
gseaquist@bickerstaff.com
**Counsel for Senator Lois Kolkhorst in her Individual Capacity**

　　　　　　　　　　　　　　　　　　　　　*/s/ Lani E. Clark*
　　　　　　　　　　　　　　　　　　　　　Lani E. Clark