# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| LANI E. CLARK | § | |
| | § | |
| v. | § | |
| | § | Case No. A-19-CV-00198-LY-SH |
| LOIS KOLKHORST | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL
  UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant's Motion for Summary Judgment, filed July 17, 2020 (Dkt. 48); Plaintiff's Motion for Summary Judgment, filed July 20, 2020 (Dkt. 49);[1] and the associated response and reply briefs. The District Court referred this case to the undersigned Magistrate Judge for resolution of all nondispositive motions and Report and Recommendation on all dispositive motions, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas (Dkt. 29).

### I. Background

Plaintiff Lani E. Clark brings this suit against Defendant Lois Kolkhorst, alleging that Kolkhorst violated Clark's First and Fourteenth Amendment rights by deleting her comments and blocking her from posting on Kolkhorst's Facebook page. Kolkhorst is a State Senator representing Texas Senate District 18. Dkt. 14 ¶ 17. Clark is a resident of Austin, Texas, and Kolkhorst's constituent. *Id.* ¶ 16.

---

[1] Plaintiff's Motion and Reply both exceed the page limits of Local Rule CV-7. Plaintiff is reminded that, despite proceeding *pro se*, she must comply with the Federal Rules of Civil Procedure and Local Rules. *See, e.g.*, *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

1

In her Amended Complaint, Clark alleges that Kolkhorst is responsible for operating a public Facebook page titled "Lois Kolkhorst" (the "Kolkhorst Facebook Page"). *Id.* ¶ 25. Clark alleges that on the Kolkhorst Facebook Page, Kolkhorst "frequently posts about matters that pertain strictly to her official government position as a sitting State Senator," including "meetings with constituents" and "legislation that may be considered by herself, as a member of the Texas Senate, and other Senators, that affects constituents in Defendant's district." *Id.* ¶ 26.

Kolkhorst submitted evidence that the Kolkhorst Facebook Page is her campaign page, established by the Lois W. Kolkhorst Campaign to support her candidacy in 2014, before she was first elected to the State Senate. *See* Ex. A, Declaration of Matthew Russell ("Russell Dec."), Dkt. 48-1 ¶¶ 3-4 (stating that the page is "operated exclusively by Kolkhorst's campaign staff," and that the campaign has paid a consultant "thousands of dollars to manage the Facebook page as a means of garnering support for Kolkhorst's election, and ongoing re-election, to office").

Clark contends that Kolkhorst "willingly and knowingly" configured and administers the Kolkhorst Facebook Page to be open to the public and to "encourage and permit public expression and interaction on matters of public concern." Dkt. 14 ¶¶ 31-32. Clark alleges that, as of the date she filed her Complaint, the "About" section of the Kolkhorst Facebook Page contained a "Government Official" designation. *Id.* ¶ 50. In response to Clark's requests for admission, Kolkhorst admits that she has changed the description on the page to "Politician," but does not recall when the change occurred. Dkt. 49-1 at 4-5 (Response to Request No. 12).

Clark avers that she first accessed the Kolkhorst Facebook Page through a Facebook application called "Town Hall." Dkt. 14 ¶ 33. Clark further alleges that: "When a Kolkhorst constituent enters their residential address into their Facebook profile and uses the Facebook 'Town Hall' application, which helps users find and communicate with their federal and state

representatives on Facebook, the constituent is directed to the public Kolkhorst Facebook page . . . ." *Id.* ¶ 25. Once a user has entered his or her address and is using the Town Hall application, any comments made by the user on his or her legislator's Facebook page include an icon to identify the user as a constituent. *Id.* Clark alleges that when she first accessed the Kolkhorst Facebook Page, she had full access and could see all posts and comment on them, with the constituent icon appearing by her name. *Id.* ¶¶ 40, 42.

On or about March 3, 2017, Kolkhorst published a post on the Kolkhorst Facebook Page to promote Senate Bill 6, known as the "Bathroom Bill," which Kolkhorst coauthored. *Id.* ¶ 34. Clark alleges that, after accessing the Kolkhorst Facebook Page through the Town Hall application, she commented on Kolkhorst's post to voice her opposition to the Bathroom Bill. *Id.* ¶¶ 33, 37. Clark alleges that several other users posted replies to her comments on the post. *Id.* ¶ 37. According to Clark, she later returned to the post and found her comments deleted. *Id.* ¶ 38. Clark posted her comments again, but later discovered that her second post also had been deleted, and that she was blocked from commenting further on the Kolkhorst Facebook Page. *Id.* ¶¶ 39-43.

In her discovery responses, Kolkhorst states that her campaign "initially hid, deleted and/or removed comments by the Plaintiff that were disruptive to the campaign's message or the participation of the campaign's supporters." Dkt. 49-1 at 52 (Responses to Interrogatory Nos. 17 and 18). Kolkhorst states that Clark was blocked after she "continued posting comments that were disruptive and/or inconsistent with the message and purpose of the campaign page." *Id.* Kolkhorst likewise has deleted other users' comments and blocked users who have expressed criticism on the Kolkhorst Facebook Page, according to Clark. Dkt. 14 ¶¶ 38, 41. Clark contends that Kolkhorst intentionally removed critical comments and "made it appear that she and her Bathroom Bill had more support than they actually did, thereby misrepresenting the public's response to her and her

bill." *Id.* ¶ 41. Clark alleges that Kolkhorst has adopted and enforced a policy or custom of removing or hiding comments that are critical of Kolkhorst or her viewpoints, and of restricting speakers who express viewpoints unfavorable to Kolkhorst or Kolkhorst's views. *Id.* ¶¶ 60-72.

Clark alleges that Kolkhorst created a public forum by encouraging comments from the public and, by blocking Clark and deleting her comments, violated her First Amendment rights by engaging in viewpoint-based discrimination. *Id.* ¶ 74. Clark further alleges that Kolkhorst took these actions without notice and without providing an opportunity for appeal, thus violating her rights under the Fourteenth Amendment's Due Process Clause. *Id.* ¶¶ 98-101. Clark asserts claims pursuant to 42 U.S.C. § 1983 against Kolkhorst in both her official and individual capacities, seeking declaratory judgment and injunctive relief. *Id.* at 25-26.

Both parties now seek summary judgment on all of Clark's claims.

## II.   Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

Where, as here, the parties have filed cross-motions for summary judgment, the Court "review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014) (quoting *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013)).

### III.  Analysis

The crux of the parties' dispute is whether the Kolkhorst Facebook Page constitutes a private, personal campaign page or a public forum. Clark asserts that Kolkhorst

> has essentially used one Facebook page for what most elected officials use two Facebook pages to accomplish: one page that is public, often found using the Facebook Town Hall application and that is used as their "official government page" and, therefore, subject to First and Fourteenth Amendment restrictions, and another public page, which is designated as a "campaign page."

5

Dkt. 49 at 26. For her part, Kolkhorst argues that the Constitution "does not require an elected official who exercises their right to regulate speech on their private, non-governmental platform to also create an 'official' page for unrestricted citizen comment." Dkt. 51 at 9. She submitted evidence that she has taken no affirmative steps to "opt in" to Facebook's Town Hall feature, launched three years after she created the Kolkhorst Facebook Page. Russell Dec., Dkt. 48-1 ¶ 8; Ex. A, Second Declaration of Matthew Russell, Dkt. 51-1 ¶ 4. Kolkhorst further contends that:

> Plaintiff seeks to compel Texas State Senator Lois Kolkhorst to display messages on her personal campaign Facebook page that are anathema to the Senator's campaign message. Because the First Amendment does not countenance Plaintiff's efforts to foist undesired speech on a private campaign, this case should be dismissed.

Dkt. 48 at 2.

### A.   Claims Against Kolkhorst in Her Official Capacity

The Court considers whether either party is entitled to judgment as a matter of law on Clark's claims against Kolkhorst first in her official capacity, then in her individual capacity.

#### 1. Action Under Color of State Law

Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of a right secured by the Constitution and laws of the United States. To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). The Court first addresses the second prong, the parties' primary focus. As Kolkhorst argues: "This case turns primarily on one issue: whether Kolkhorst acted under 'color of law' for purposes of Section 1983, such that the First Amendment would apply to Kolkhorst's decision to prevent Plaintiff from commenting on Kolkhorst's Facebook page." Dkt. 51 at 2.

Section 1983's "under color of state law" requirement is the functional equivalent of the Fourteenth Amendment's "state action" requirement. *United States v. Price*, 383 U.S. 787, 794 n.7 (1966). "A person acts under color of state law if he misuses power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). Assessing whether conduct constitutes action under color of state law is a "fact-intensive" inquiry, addressed on a case-by-case basis. *Rundus v. City of Dallas, Tex.*, 634 F.3d 309, 313 (5th Cir. 2011); *see also Skinner v. Ry. Labor Execs.' Assoc.*, 489 U.S. 602, 614 (1989) (holding that courts consider the totality of the circumstances to determine whether conduct amounts to state action); *Windom v. Harshbarger*, 396 F. Supp. 3d 675, 681 (N.D. W. Va. 2019) (denying motion to dismiss claim that plaintiff's comments were deleted and he was blocked from lawmaker's Facebook page, and stating: "There is no specific formula to apply when determining whether an official acted under color of state law; courts look to the totality of the circumstances.").

Kolkhorst contends that her Facebook page is a private social media account, notwithstanding the fact that it posts some information about her "policies and initiatives as a senator." Dkt. 48 at 13. Clark, in turn, contends that Kolkhorst has acted under color of state law because there is a nexus between her challenged conduct and her position as a state official. Clark points out that Kolkhorst "created posts and events on the Kolkhorst Facebook page while she served as a Texas State Senator, the subject matter of which pertain strictly to her official government position as a Senator, such as meetings with the Governor and constituents and about legislation that affects her district." Dkt. 49 at 16. Kolkhorst "uses the same Facebook page for posts about both official activities and private matters," Clark contends, and "there is pervasive entwinement between Defendant's campaign activities and her Senate position." Dkt. 52 at 4.

Kolkhorst argues that "use of the campaign page to include some posts discussing Defendant's accomplishments and activities is not an official act of her senate office, but her campaign's concentrated efforts to retain and build support for the next election." Dkt. 51 at 4. Kolkhorst also submits that the page serves no governmental purpose, *id.* at 10, in contrast with the facts of *Knight First Amend. Inst. v. Colum. Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), *petition for cert. filed* (U.S. Aug. 20, 2020) (No. 20-197). In *Knight*, the Second Circuit affirmed a grant of summary judgment to plaintiffs, finding that President Trump's blocking of users from his official Twitter account because of their expressed political views violated their First Amendment free speech rights. The court concluded that "the First Amendment does not permit a public official who utilizes a social media account for all manner of official purposes to exclude persons from an otherwise-open online dialogue because they expressed views with which the official disagrees." *Id.* at 230. Although affirming the summary judgment grant on "overwhelming" evidence, the Second Circuit stated:

> Whether First Amendment concerns are triggered when a public official uses his account in ways that differ from those presented on this appeal will in most instances be a fact-specific inquiry. The outcome of that inquiry will be informed by how the official describes and uses the account; to whom features of the account are made available; and how others, including government officials and agencies, regard and treat the account.

*Id.* at 236; *see also One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940 (W.D. Wis. 2019) (finding on summary judgment that legislators acted under color of state law and violated the First Amendment by blocking plaintiff advocacy group from their Twitter pages).

### a. Social Media Case Law

The Fifth Circuit has not yet addressed a case directly on point. In *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 448 (5th Cir. 2019), the court found that the plaintiff sufficiently pled that the official Facebook page of the Hunt County Sheriff's Office was a public forum and deletion of

8

comments constituted viewpoint discrimination.² The county did not contest that the Facebook site was a public forum. Other courts, however, have adjudicated disputes more similar to the case at bar. *See, e.g.*, Joseph A. D'Antonio, Note, *Whose Forum Is It Anyway: Individual Government Officials and Their Authority To Create Public Forums on Social Media*, 69 DUKE L.J. 701, 713 & n.74 (2019) (stating that "only a handful of courts have considered whether elected officials' social media pages constitute public forums," and collecting cases). Kolkhorst cites several of these cases. They include *Fehrenbach v. Zeldin*, CV 17-5282 (JFB) (ARL), 2019 WL 1322619 (E.D.N.Y. Feb. 6, 2019), *report and recommendation adopted*, 2019 WL 1320280 (E.D.N.Y. Mar. 21, 2019), in which the court dismissed a First Amendment claim against a congressman for allegedly deleting a post from his campaign Facebook page, finding that it was private action. *Id.* at *5. In addition, Kolkhorst cites *German v. Eudaly*, No. 3:17-cv-2028-MO, 2018 WL 3212020, at *6 (D. Or. June 29, 2018), in which the court found that the plaintiff failed to allege that a city commissioner purported to act under color of law when she complained about the plaintiff on her "non-official Facebook page," operated in her personal capacity, in contrast to the official page she used to discuss city business.

Kolkhorst also relies on *Davison v. Randall*, 912 F.3d 666, 680-81 (4th Cir. 2019), in which the Fourth Circuit applied factors including the following to determine whether politician Phyllis Randall of Loudoun County, Virginia, acted under color of state law in operating a Facebook page:

> (1) the title of the page includes Randall's title; (2) the page is categorized as that of a government official; (3) the page lists as contact information Randall's official County email address and the telephone number of Randall's County office; (4) the page includes the web address of Randall's official County website; (5) many—perhaps most—of the posts are expressly addressed to "Loudoun," Randall's constituents; (6) Randall has submitted posts on behalf of

---

² The Fifth Circuit reversed in part the district court's ruling granting a motion to dismiss. The case settled after remand. *Robinson v. Hunt Cnty., Tex.*, No. 3:17-cv-00513-K-BT, Dkt. 82 (N.D. Tex. Dec. 17, 2019).

> the Loudoun Board as a whole; (7) Randall has asked her constituents to use the Chair's Facebook Page as a channel for "back and forth constituent conversations"; and (8) the content posted has a strong tendency toward matters related to Randall's office."

Dkt. 48 at 14. Kolkhorst distinguishes her Facebook page as follows:

1) The page does not describe her as "Senator Lois Kolkhorst" but simply as "Lois Kolkhorst." Ex. C, Dkt. 48-1 at 8;

2) She is currently listed as a politician, rather than a government official. Russell Dec., Dkt. 48-1 ¶ 6;

3) Followers are directed to her campaign website, not to any official government website. *Id.* ¶ 5;

4) The page expressly states that it is "not [an] official government page." Ex. C, Dkt. 48-1 at 8;

5) Facebook informs users that the Lois W. Kolkhorst Campaign owns the page. Ex. B, Dkt. 48-1 at 7; and

6) Kolkhorst frequently uses the page to communicate about items having nothing to do with politics.

*Id*. Kolkhorst also emphasizes that she has performed no official duties through her Facebook page; the page is operated and financed by the Kolkhorst campaign; and it directs Facebook users to "loisfortexas.com," a campaign webpage, paid for with campaign funds, used to solicit support and funds for Kolkhorst's electoral efforts. *Id.* at 15.

Kolkhorst, however, did not cite a recent published decision in a case sharing many similarities with this one. In *Faison v. Jones*, 440 F. Supp. 3d 1123 (E.D. Cal. 2020), the court granted a preliminary injunction to plaintiffs who had been blocked and their posts deleted from a sheriff's Facebook page. The sheriff argued that he created the page as a tool for his campaign, and emphasized that he labeled himself a "Public Figure" on the page rather than a "Government Official." *Id.* at 1133. Although the sheriff posted about holidays and personal updates about himself and his family, he also included his official title on the page. *Id.* at 1134. Considering the totality of the circumstances, the court found that the plaintiffs were likely to succeed in showing that the defendant acted under color of state law. *Id. But cf. Morgan v. Bevin*, 298 F. Supp. 3d

1003, 1012-13 (E.D. Ky. 2018) (denying preliminary injunction regarding deletion of Facebook and Twitter comments).

### b. Application of Case Law to Summary Judgment Evidence

All of the cases discussed above share a fact-intensive analysis of the challenged social media site. Following this approach and considering the totality of the circumstances, the summary judgment record here shows that there are genuine disputes of material fact as to whether Kolkhorst operates the Kolkhorst Facebook Page under color of state law.

Supporting Kolkhorst's position that the Kolkhorst Facebook Page is personal, postings to that page include a Bible verse (Ex. D, Dkt. 48-1 at 10) and photos of, e.g., Kolkhorst getting a haircut (*id.* at 11) and her young son dressed in a tuxedo (*id.* at 12). On the other hand, while Kolkhorst is correct that the Kolkhorst Facebook Page identifies her as "Lois Kolkhorst, Politician," the large photo at the top of the page displays a design identifying her as a Texas Senator:



Ex. C, Dkt. 48-1 at 8. Other posts on the page include descriptions of meetings with constituents (Ex. 3, Dkt. 49-1 at 10) and House Speaker Dennis Bonnen (*id.* at 11), as well as events such as "Senator Kolkhorst's SD18 Ice Cream Reception" (*id.* at 12) and "Senator Lois W. Kolkhorst's Fort Bend District Office Grand Opening" (*id.* at 14). The page also includes the following post, referring to Kolkhorst's service to her district:



*Id.* at 9. This evidence creates a fact question as to whether the Kolkhorst Facebook Page operates under color of state law.

Finally, Kolkhorst argues in the alternative that her Facebook page is exempt from First Amendment scrutiny because it constitutes government speech. *See* Dkt. 48 at 16. The speech at issue, however, is Clark's, not Kolkhorst's. For this reason, similar arguments have been rejected out of hand. *See, e.g.*, *Knight*, 928 F.3d at 239; *Davison*, 912 F.3d at 686; *Faison*, 440 F. Supp. 3d at 1137; *One Wisconsin Now*, 354 F. Supp. 3d at 955. The Court recommends that this argument not be found persuasive here.

As previously stated, assessing whether conduct constitutes action under color of state law is "fact-intensive," *Rundus*, 634 F.3d at 313, and a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. Considering the totality of the circumstances and the evidence submitted by both parties, the Court finds that there is a genuine issue of material fact as to whether Kolkhorst acted under color of state law in operating the Kolkhorst Facebook Page.

### 2. First Amendment

Again, to state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States. Clark has satisfied that requirement by alleging that the Kolkhorst Facebook Page is a public forum and Kolkhorst has engaged in viewpoint discrimination by deleting her comments and banning her account, violating the First Amendment.

Kolkhorst makes two different arguments on the merits of Clark's First Amendment claim. Although they are potentially contradictory, the undersigned finds them unpersuasive for the same reason: Both arguments fail because there are genuine issues of material fact as to whether Kolkhorst acted under color of state law through the Kolkhorst Facebook Page.

First, in her Motion for Summary Judgment, Kolkhorst argues that Clark has not established an ongoing violation of her First Amendment rights. Kolkhorst contends that:

> Because Kolkhorst is a state actor in her official capacity, sovereign immunity bars any claim against her unless an exception to immunity applies. The only such exception that would apply here is the *Ex parte Young* doctrine. And to determine whether *Ex parte Young* circumvents the Eleventh Amendment's bar to suit, a court conducts a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (emphasis added).

Dkt. 48 at 18. Kolkhorst contends that Clark alleges no ongoing violation because, while her comments under the pseudonym "Lulu Clark" were blocked from the Kolkhorst Facebook Page,

Clark can post using another of her pseudonymous Facebook accounts, that of "Zelda Sukit," which Clark has changed to "Zelda Williams." *Id.*; *see also* Dkt. 51 at 13 n.2.

Second, in her Response to Clark's Motion for Summary Judgment, Kolkhorst argues that she is not a state actor for purposes of the First Amendment analysis. Dkt. 51 at 11. Kolkhorst quotes *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019), stating that, under the state-action doctrine, "a private entity may be considered a state actor when it exercises a function traditionally exclusively reserved to the State." (internal quotation marks omitted).[3] Kolkhorst submits that "establishing a Facebook page is not something that only governmental entities or actors do." Dkt. 51 at 11. But as reviewed at length in the discussion of developing case law above, many courts – including the Fifth Circuit Court of Appeals – have found to the contrary that operating social media accounts may constitute state action. *See, e.g.*, *Robinson*, 921 F.3d at 451.

For the foregoing reasons, the undersigned recommends that both parties' motions for summary judgment on Clark's First Amendment claim under § 1983 against Kolkhorst in her official capacity be denied.

### 3. Due Process

Kolkhorst contends that Clark lacks a due process right for which she is entitled to notice, and that a notice requirement in the context of commenting on a social media page would be practically unworkable. Otherwise, the parties give scant attention in their briefs to Clark's due process claim.

At the motion to dismiss stage, the Court found it plausible that Kolkhorst's ban of Clark from the Kolkhorst Facebook Page constitutes an impermissible prior restraint on her freedom of speech, thereby implicating her due process rights. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 n.14 (1972) ("When a State would directly impinge upon interests in free speech

---

[3] *Manhattan* concerns operation of public access channels on a cable television system.

or free press, this Court has on occasion held that opportunity for a fair adversary hearing must precede the action . . . ."). As at the motion to dismiss stage, in her summary judgment briefing, Kolkhorst again fails to address Clark's claim regarding her post-deprivation due process rights. *See* Dkt. 14 ¶ 100. Neither party has made an initial showing that there is no evidence to support the nonmoving party's case. On the summary judgment record, the undersigned recommends against granting judgment as a matter of law to either party on Clark's Fourteenth Amendment claim against Kolkhorst in her official capacity.

### B. Claims Against Kolkhorst in Her Individual Capacity

Finally, Kolkhorst argues that she is entitled to summary judgment on Clark's claims against her in her individual capacity because Clark seeks only injunctive and declaratory relief, not monetary damages: "On its face, the declaratory and injunctive relief Plaintiff requests is clearly sought against Kolkhorst in her official, rather than her individual, capacity. Plaintiff's entire suit is predicated on the assertion that Kolkhorst operates the Lois Kolkhorst Facebook page as an official public page of her Senate office." Dkt. 48 at 20. Kolkhorst relies on *Greenawalt v. Indiana Dep't of Corrections*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."), and *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief.") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)).

Clark does not directly respond to Kolkhorst's argument. To the contrary, in her Motion for Summary Judgment, Clark submits that she is entitled to judgment "on Defendant's defense that she was acting in her individual capacity in managing the Kolkhorst Facebook page." Dkt. 49 at 25. Clark's claims against Kolkhorst in her individual capacity therefore are deemed abandoned.

*See, e.g.*, *Neff v. Allstate Vehicle & Prop. Ins. Co.*, No. 5:17-CV-191-DAE, 2019 WL 1560473, at *5 (W.D. Tex. Feb. 28, 2019) (collecting cases).

## IV. Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that Plaintiff Lani E. Clark's Motion for Summary Judgment (Dkt. 49) be **DENIED**.

The undersigned **FURTHER RECOMMENDS** that Defendant Lois Kolkhorst's Motion for Summary Judgment (Dkt. 48) be **GRANTED** as to Plaintiff's claims against Defendant in her individual capacity, and **DENIED** as to Plaintiff's First Amendment and Due Process claims against Defendant in her official capacity.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 20, 2020.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE