IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LANI E. CLARK, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | |
| | § | |
| LOIS KOLKHORST, TEXAS STATE | § | CAUSE NO. 1:19-CV-198-LY |
| SENATOR, IN HER OFFICIAL | § | |
| CAPACITY, | § | |
| DEFENDANT. | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court called the above-styled and numbered cause for bench trial on July 26, 2021. Plaintiff *pro se* Lani E. Clark appeared in person and Defendant Lois Kolkhorst appeared in person and through counsel. After submitting post-trial briefing, the parties presented closing arguments on September 7, 2021. Having carefully considered the briefing, proposed findings of fact and conclusions of law, exhibits, arguments of counsel, stipulations, applicable law, and entire record in this case, the court makes the following findings of fact and conclusions of law.[1]

*Jurisdiction*

The court has jurisdiction over this cause because Clark's claims arise under the laws of the United States. *See* 28 U.S.C. § 1331.

*Background*

Clark resides within Texas Senate District 18. Kolkhorst is her state senator. Kolkhorst served seven terms in the Texas House of Representatives before becoming a state senator on

---

[1] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed. Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

December 22, 2014.

In advance of the 2014 Texas Senate election, Kolkhorst established a publicly accessible Facebook Page (the "Kolkhorst Page") on the advice of her campaign consultants. Facebook is a popular social-media platform that allows users to share messages, promote their ideas and businesses, and communicate directly with other users. Facebook describes a "page"—as opposed to an individual Facebook "profile"—as a platform "for businesses, brands, organizations, and public figures to share their stories and connect with people." Administrators of Facebook pages can create posts with pictures, text, links, calendar events, and other forms of media. Individual Facebook users can interact with these posts through "reactions" (such as "likes"), comments, and replies to other users' comments. Administrators can moderate and filter activity on pages, hide or delete individual comments from posts, and remove and ban users from pages.

Kolkhorst creates most of the content for the Kolkhorst Page. Some of Kolkhorst's posts relate to personal matters, such as a post from May 8, 2020, that shared photos of Kolkhorst's haircut, or a post from June 10, 2020, that shared a photo of Kolkhorst's son in a tuxedo. Certain posts celebrate holidays or special dates. Other posts document Kolkhorst's participation in party conventions, other politicians' campaign rallies, or in her own campaigning efforts. Some posts highlight Kolkhorst's work as a state senator, such as a post from February 7, 2017, documenting a "[v]ery full day in Austin: on the Senate floor we passed ethics reform (SB 14) and sanctuary cities ban (SB 4) . . . both very monumental pieces of legislation. I was also pleased to meet with students from Blinn, Victoria and Wharton Co Junior College for Community College Day at the Capitol as well as constituents from Matagorda County for Matagorda Day at the Capitol!" Kolkhorst also posts about meetings with other politicians like Texas Governor Greg Abbott or former Texas Speaker of the House Dennis Bonnen. Although Kolkhorst creates most of the

content for the Kolkhorst Page, she has authorized her communications director Matthew Russell and the private consulting group Vici Media to work on the Kolkhorst Page and serve as administrators.

In addition to posts, Facebook pages contain general information about the business, organization, or individual. The "About" section of the Kolkhorst Page contains a link to www.LoisForTexas.com, which is Kolkhorst's campaign website. The section also displays the following text: "Wife, mother, senator, small business owner, proven conservative, fifth generation Texan, and TCU Horned Frog." After a line break, the section displays the text: "Campaign page, not official government page." In the "Home" section of the Kolkhorst Page, a section called "Page Transparency" lists the page owner as "Lois W. Kolkhorst Campaign."

Clark initially found the Kolkhorst Page through Facebook's "Town Hall" application, which allows a user to find Facebook pages for their elected officials by typing in a home address. The Town Hall application includes only Facebook pages that identify an elected official as a "Politician" or "Government Official." The "About" section of the Kolkhorst Page initially identified Kolkhorst as a "Government Official." At some point later, this identification was changed to "Politician." Kolkhorst did not take affirmative steps to connect with the Town Hall application, nor did any member of her campaign. Facebook retains the ultimate control over the Town Hall application.

The specific events giving rise to the lawsuit occurred on or after March 3, 2017, when Kolkhorst created a post on the Kolkhorst Page titled "WOMEN'S RIGHTS ARE HUMAN RIGHTS," which articulated her support for a piece of then-pending legislation called the Texas Privacy Act. Clark, who opposed the bill, used one of her personal Facebook profiles named "Lulu Clark" to post comments voicing her opposition on Kolkhorst's post. Clark does not recall the

exact content of her comments or her replies to other comments. Matthew Russell—Kolkhorst's communications director and one of the Kolkhorst Page administrators—hid or deleted some or all of Clark's comments because they were "disruptive to the campaign's message." Russell also hid or deleted comments from other Facebook users, deciding on a "case-by-case basis" whether a comment was "disruptive." In total, 132 user comments were "hidden" from the post, which prevented the comments from being seen by other users. Additional comments may have been fully deleted from the post.

Russell later blocked Clark's "Lulu Clark" account from being able to comment on any post on the Kolkhorst Page. Other users were also blocked from commenting on the Kolkhorst Page. Clark's secondary Facebook account, called "Zelda Sukit" and later "Zelda Williams," was not blocked from commenting on the Kolkhorst Page. Facebook later permanently banned Clark's "Lulu Clark" account from the entire social-media platform.

Clark contacted Kolkhorst's senate office in 2017 and again in 2019 to request that Kolkhorst unblock Clark's account. During one such call, Russell instructed Clark to email the Kolkhorst campaign to inquire about unblocking the account. Clark emailed the Kolkhorst campaign, and Russell sent a response from the campaign email address inviting Clark to "petition your government, and in this case Senator Kolkhorst's state office via phone call, email, fax, mail, or by visiting any of her four physical offices including the Capitol or three district offices." Despite Clark's attempts to contact Kolkhorst's office, her account remained blocked.

Clark filed suit against Kolkhorst in her individual and official capacities on March 1, 2019, alleging that Kolkhorst violated Clark's First and Fourteenth Amendment rights by deleting her

comments and blocking her from commenting on the Kolkhorst Page.[2] In her First Amendment claim, Clark argues that the Kolkhorst Page constitutes a public forum and that Kolkhorst engaged in viewpoint discrimination by blocking Clark and deleting her comments. Clark further argues that Kolkhorst violated her rights under the Fourteenth Amendment's Due Process Clause by taking these actions without notice or providing an opportunity for appeal. Clark sued under the Civil Rights Act of 1871, requesting declaratory and injunctive relief. *See* 42 U.S.C. § 1983 ("Section 1983").

Kolkhorst argues that because Facebook has permanently banned Clark's "Lulu Clark" account from the social-media platform, Clark's claims are moot and the court cannot adjudicate the case. Alternatively, Kolkhorst argues that removing Clark's comments and banning Clark's account did not occur "under color of [state law]" as required for a Section 1983 claim, but instead occurred in a private capacity because the Kolkhorst Page serves as a campaign tool. Kolkhorst further argues that she is not a "state actor" subject to constraint under the First Amendment, that the Kolkhorst Page constitutes "government speech" exempt from First Amendment protections, and that Clark failed to establish a due process violation.

For the reasons to follow, the court concludes that (1) Facebook's decision to ban Clark's "Lulu Clark" account does not moot the case, and (2) Clark failed to establish that Kolkhorst's allegedly unconstitutional actions occurred under color of state law as required by Section 1983. The court will render final judgment accordingly in a separate order.

*Mootness*

Kolkhorst first argues that Facebook's permanent ban of Clark's "Lulu Clark" account

---

[2] The court dismissed Clark's claims against Kolkhorst in her individual capacity on November 6, 2020 (Doc. #56).

moots Clark's claims. Specifically, Kolkhorst argues that Clark's secondary "Zelda Williams" account "is free to access and comment on any post on the Kolkhorst Facebook page," and therefore Clark cannot assert an ongoing case or controversy. Clark argues that because comments she made on the Kolkhorst Page from her secondary "Zelda Williams" account were also hidden or deleted, her claims still involve a live controversy that warrants relief from the court.

A case becomes moot and therefore no longer satisfies the "case" or "controversy" requirements of Article III of the Constitution when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). "[A]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Knox v. Service Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012).

The court previously ruled on the issue of mootness on May 4, 2021, when the court adopted the magistrate judge's report and recommendation concluding that Clark retains a concrete interest in relief from the court despite Facebook's ban of the "Lulu Clark" account (Docs. ##69, 71). Clark alleged that Kolkhorst removed comments she posted from both the "Lulu Clark" account and the "Zelda Williams" (previously "Zelda Sukit") account. During trial, Clark testified that she has used the Zelda Williams account to post on the Kolkhorst Page. Because Kolkhorst's allegedly unconstitutional actions involve the still-active Zelda Williams account, the court again concludes that Clark has a justiciable interest in the case and therefore her claims are not moot.

***Section 1983 claims***

To state a claim under Section 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013). Kolkhorst argues that Clark failed to establish the second prong—that her actions occurred under color of state law—because the Kolkhorst Page relates to campaign matters, not official state action. Clark argues that she established the second prong by showing that (1) the Kolkhorst Page bears the trappings of an official, state-run account and functions as an important tool of governance; (2) there was pervasive entanglement between the actions involving the Kolkhorst Page and Kolkhorst's duties as a state official; and (3) Kolkhorst misused her power while clothed in the authority of state law. The court will address each of Clark's arguments in turn.

Clark first argues that the act of hiding Clark's comments, deleting Clark's comments, and banning Clark's account mirrors similar acts held unconstitutional in a line of cases involving government officials and their social-media accounts. In *Knight First Amendment Institute at Columbia University v. Trump*, the Second Circuit held that then-President Donald Trump engaged in unconstitutional viewpoint discrimination under the First Amendment when blocking certain users from accessing and interacting with his Twitter account. 928 F.3d 226, 230 (2d Cir. 2019).[3] Trump argued that in blocking the plaintiffs, he exercised control of a private, personal account and therefore the actions did not constitute state action. *Id.* at 234. In concluding that Trump's

---

[3] The Supreme Court of the United States granted *certiorari* in *Knight* after Trump was not re-elected in 2020. The Court vacated the Second Circuit's judgment and remanded the case with instructions to dismiss as moot. *Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220, 1220 (2021).

7

decision to block the plaintiffs satisfied the First Amendment's state-action requirement (which courts treat the same as the Section 1983 under-color-of-law requirement),[4] the *Knight* court noted that Trump's Twitter account "[bore] the trappings of an official, state-run account" in that it displayed his account as "45th President of the United States of America, Washington D.C." and included header photographs of Trump "engaged in the performance of his official duties." *Id.* at 231. The *Knight* court also pointed out that Trump used the account "as an important tool of governance and executive outreach" to communicate with the public about his administration, announce matters related to official government business, and engage with foreign leaders. *Id.* at 235–36. The *Knight* court further noted that other government agencies, like the National Archives, treated Trump's account as containing official government records. *Id.* at 232.

The Fourth Circuit referenced similar factors in *Davison v. Randall* when holding that a county chair engaged in unconstitutional viewpoint discrimination when she blocked a county resident from her Facebook page. 912 F.3d 666, 688 (4th Cir. 2019). The *Davison* court noted that the county chair created the Facebook page to "further her duties as a municipal official" by providing information to the public about official activities, soliciting input on policy issues, and informing county residents about pressing safety and public health issues. *Id.* at 680. The *Davison* court likewise noted various "trappings of her office" on the Facebook page, like her official title, a chosen category of "government official," a web address for the county website, and official county contact information. *Id.* at 680–81.

The court finds that the facts of this case distinguish it significantly from *Knight* and *Davison*. First, the Kolkhorst Page does not bear the same level of "trappings of an official, state-

---

[4] *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982) ("the statutory requirement of action 'under color of state law' and the 'state action' requirement . . . are identical.").

8

run account" because (1) it clearly states, "Campaign page, not official government page" in the "About" section, (2) it lists the page owner as the "Lois W. Kolkhorst Campaign," and (3) it links to www.LoisForTexas.com, which is Kolkhorst's campaign website, not an official state website. The Kolkhorst Page's main header displays a large family photo, not an image of Kolkhorst engaged in any official duty. Although the Kolkhorst Page initially categorized her as a "Government official" and later a "Politician," this description does not outweigh the other descriptive items indicating that Kolkhorst uses the page for campaign purposes. Moreover, although Clark initially connected with the Kolkhorst Page through Facebook's "Town Hall" feature, the page contains sufficient indications that it relates to campaign activities, and neither Kolkhorst nor any member of her staff took independent action to connect with the "Town Hall" application.

The court also finds that Kolkhorst does not use the page as "an important tool of governance." Clark points out a variety of posts on the Kolkhorst Page that highlight meetings, events, and projects that Kolkhorst engaged with while serving as a state senator, such as a meeting with Texas Governor Greg Abbott,[5] an event with constituents in the Port Aransas area,[6] and a

---

[5] Kolkhorst captions the post: "A terrific meeting with Governor Greg Abbott after his State of the State address! I look forward to advancing many conservative priorities and reforms during the 85th Legislature. What are some of the issues most important to you?" The post includes a photo of Kolkhorst sitting at a table with Abbott.

[6] Kolkhorst captions the post: "Today, I spent time in Port Aransas and Rockport/Fulton meeting with constituents and local leaders about TWIA, FEMA and other issues. There is much rebuilding going on for residents and tourism is returning, but so many still continue to suffer. We celebrated progress with some and cried with others. Whenever I spend time in the communities impacted by Harvey, I am reminded of the strength and resilience of the Texas coast. My message to everyone impacted by Harvey is simple: you have not and will not be forgotten." The post includes a photo of Kolkhorst wearing a hard hat and a vest while standing in a circle with other similarly dressed people.

collection of photos taken from the first day of the 86th Legislative Session.[7] Although several of Kolkhorst's posts document activities that are unique to her position as a state senator, the record indicates that these posts largely aim to promote Kolkhorst's successes from a campaign perspective rather than serve as a "tool of governance." Kolkhorst's posts do not announce major legislative actions in the first instance (although some posts celebrate when a bill Kolkhorst worked on is passed); she does not use the page to communicate significantly with other officials; and she does not post information related to pressing public-health or safety issues. Clark argues that Kolkhorst uses Facebook's calendar function to schedule official government activities, but most of Kolkhorst's Facebook events indicate a desire to reach out to her voters, like a "SD18 Ice Cream Reception" or a "Meet & Greet and Ice Cream Social w/ Heidi Cruz & Senator Kolkhorst." Although several events reference "grand opening(s)" of Kolkhorst's senate satellite offices, the record does not indicate that Kolkhorst conducted official business during these events.

The court finds that the facts in this case more closely resemble those in *Campbell v. Reisch*, where the Eighth Circuit concluded that a Missouri state senator did not act under color of state law when blocking a constituent from a Twitter page that she created to announce her candidacy for office. 986 F.3d 822, 823 (8th Cir. 2021). The *Reisch* court determined that the senator created the account as a private individual before her election and subsequently "used [the account] overwhelmingly for campaign purposes." *Id.* at 826. The *Reisch* court noted that the senator's posts "frequently harkened back to promises she made on the campaign trail, and [] touted her success in fulfilling those promises and in her performance as a legislator." *Id.*

---

[7] Kolkhorst captions the post: "Opening Day! Today was the first day of the 86th Legislative Session and it was so meaningful to be with family and constituents. What an honor to represent the people of Senate District 18. Our office is your office and together we will deliver solid and sensible solutions for Texas and our district."

10

Although the senator occasionally "provide[d] updates on where certain bills were in the legislative process or the effect certain recently enacted laws had had on the state," the *Reisch* court concluded that "sporadic engagement in these activities does not overshadow what we believe was quite clearly an effort to emphasize her suitability for public office." *Id.* at 826–27.

The general theme of the Kolkhorst Page similarly conveys a "desire to create a favorable impression of [Kolkhorst] in the minds of her constituents." *See id.* at 827. For example, in a post from February 8, 2017, Kolkhorst posted that she "was proud to co-author and pass Senate Bill 4" and included a photo of herself with the text "Promise Kept!" alongside her campaign logo. Kolkhorst has posted extensively about her own campaigning efforts, as well as her support and involvement in other politicians' campaigns. Although Kolkhorst occasionally used the Kolkhorst Page to provide updates on pending legislation, these updates typically included language directed to her constituents that highlight broader political themes. A post from February 9, 2017, for example, shows a photo of a man on a horse with a caption stating that Kolkhorst was "working . . . on a new property rights protection package in Senate Bills 740, 741, and 721," noting that the bills "give[] all landowners the new tools and safeguards they need to protect their property." The court finds that Kolkhorst's occasional references to her work as a senator do not overshadow the main theme of the Kolkhorst Page—"to emphasize her suitability for public office." *See id.* The court concludes that the Kolkhorst Page does not bear the trappings of an official, state-run account or otherwise function as an important tool of governance in a way that satisfies Section 1983's under-color-of-state-law requirement.

Clark also argues that there is "pervasive entwinement," a "close nexus," or "joint activity" between Kolkhorst's private campaign activities and her public office. *See Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96, 298 (2001). Specifically, Clark

argues that Kolkhorst "failed to keep [her] official matters clearly separated from [her] campaign matters." The court disagrees. Kolkhorst established procedures separating her campaign activities from her senate activities: Kolkhorst maintained separate communication channels and a separate website for her campaign, and Russell testified that all posts on the campaign page occurred outside of senate working hours. Russell also testified that he used his personal computer and phone when working on the Kolkhorst Page and other campaign matters. The court concludes that there is no "pervasive entwinement," "close nexus," or "joint activity" between Kolkhorst's campaign activities—including the Kolkhorst Page—and her official duties as a state senator.

Finally, Clark argues that Kolkhorst "misused the power of her office with regard to the Kolkhorst Facebook page." *See United States v. Classic*, 313 U.S. 299, 326 (1941) (holding that election officials acted under color of law when altering and falsely counting ballots in primary election). Specifically, Clark argues that Kolkhorst violated Texas law and guidance from the Texas Ethics Commission by (1) posting photos, text, and events related to her official government position and (2) posting photos that were taken in her senate office. Texas law prohibits a state officer from "us[ing] official authority or influence . . . to interfere with or affect the result of an election or nomination of a candidate or to achieve any other political purpose." Tex. Gov't Code Ann. § 556.004(a)(c). Texas law also prohibits a public servant from "misus[ing] government property, services, personnel, or any other thing of value belonging to the government" with "intent to obtain a benefit." Tex. Penal Code Ann. § 39.02(a). An opinion from the Texas Ethics Commission concludes that "the best practices for public officers are to remove themselves from government facilities and decline to use other government resources, of which they have custody or possession, for campaign activity, including political advertising." Tex. Ethics Comm'n Op. No. 550 (2019).

Assuming but not deciding that Kolkhorst violated a state statute or committed an ethics violation, the court concludes that such violation does not rise to the level of "misuse of power" required to satisfy Section 1983's under-color-of-state-law requirement. *Classic* initially established the "misuse of power" test. 313 U.S. at 326 ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law."). *Classic* involved two election officials who used their positions to tamper with ballots and falsely certify votes. *Id.* More recent decisions indicate that the "misuse of power" test contemplates serious abuse of an official position. *See United States v. Douglas*, 957 F.3d 602, 609 (5th Cir. 2020) (correction officer misused power when handcuffing inmates and spraying them with pepper spray in area without cameras); *United States v. Causey*, 185 F.3d 407, 415 (5th Cir. 1999) (police officer misused power when using police station, police car, and police radio to plan, execute, and cover up a murder). The court concludes that even if Kolkhorst's Facebook posts involving photos of her senate office violate Texas law—an issue that the court does not decide—such actions do not constitute the type of "misuse of power" contemplated when establishing the under-color-of-state-law requirement of a Section 1983 claim.

Because the court concludes that Clark did not establish that Kolkhorst's actions occurred under color of state law, Clark's Section 1983 claims for violations of the First and Fourteenth Amendments cannot succeed. As no other claims remain, the court will render final judgment in a separate order.

*Conclusion*

For the above reasons, the court concludes that Plaintiff Lani Clark did not prove that Defendant Lois Kolkhorst is liable to Clark under Section 1983 for violations of her First and Fourteenth Amendment rights.

SIGNED this **7th** day of December, 2021.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE